IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MIGUEL RIVERA and VIRGINIA VERTIZ, husband and wife, )
)
)
Plaintiffs, )
)
v. ) C.A. No. 17-1255 (MN)
)
CARL V. ROMA, )
)
Defendant. )

# MEMORANDUM OPINION

Bruce L. Hudson, HUDSON & CASTLE LAW, LLC, Wilmington, DE – attorney for Plaintiffs

Daniel M. Young, WARD GREENBERG HELLER & REIDY LLP, Wilmington, DE – attorneys for Defendant

May 21, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

On August 4, 2017, Plaintiffs Miguel Rivera ("Rivera") and Virginia Vertiz ("Vertiz") (collectively, "Plaintiffs") filed a complaint ("Complaint") against Defendant Carl Roma ("Roma" or "Defendant") in Delaware Superior Court asserting claims against Defendant for the negligent operation of his motor vehicle. (D.I. 1, Ex. A). On September 1, 2018, Defendant removed the case to this Court. (D.I. 1). Presently before the Court is Defendant's motion for summary judgment. (D.I. 29). For the reasons set forth below, the Court will **DENY** the motion.

## I.     BACKGROUND

Before dawn on November 1, 2015, Plaintiff Rivera was walking northbound on U.S. 1 near South Bethany, Delaware. (D.I. 1, Ex. A ¶ 4). Earlier that morning, Rivera and his wife had a disagreement and he had decided to leave their hotel and hitchhike back to their home in Alexandria, Virginia. (D.I. 32, Ex. F ("Rivera Depo.") at 50:3-51:3).

At approximately 5:00 a.m., Defendant Roma left his hotel in Ocean City, Maryland and proceeded northbound towards his home in Endicott, New York with passenger Steven Bernstein ("Bernstein") riding with him. (*Id.*, Ex. I ("Roma Depo.") at 5:18-24; 10:11-20; Ex. D at 2). At approximately 5:29 a.m., while travelling northbound on U.S. 1, Roma struck Rivera with the front center of his car. (D.I. 1, Ex. A ¶ 6). Rivera was transported to Beebe Medical Center and "was later flown to Christiana Hospital for serious internal injuries, broken legs, and broken ribs." (D.I. 32, Ex. D at 4). Rivera required hospitalization, surgery, and physical therapy. (D.I. 1, Ex. A ¶¶ 10-11). As a result of the collision, Rivera claims that he "was and is completely disabled." (*Id.* ¶ 11).

Both Plaintiff Rivera and Defendant Roma had been drinking alcohol the evening before the accident. Rivera testified that he had had four beers the evening before between 6:00 p.m. and

1

12:00 a.m. (Rivera Depo. at 66:10-17). Approximately seven hours later, however, after the accident, Rivera's blood was drawn and tested. (D.I. 32, Ex. G). It registered an Ethanol Level of 176, which constitutes a blood alcohol content ("BAC") of .14%. (*Id.*, Ex. E ("Burns Depo.") at 32:4-33:7). Moreover, Corporal Jay Burns of the Delaware State Police testified that when he saw Rivera at the hospital, "there was an alcoholic beverage – an odor of an alcoholic beverage emanating from his person." (Burns Depo. at 30:12-15).

Defendant also admitted to law enforcement that he had consumed alcohol the night prior. He estimated that the evening prior to the collision, he consumed between 1 and 1.5 beers per hour from about 5:00 p.m. until about 12:00 a.m. (Roma Depo. at 12:4-14-11). Defendant testified that he went to sleep around 12:20 a.m. and awoke before 5:00 a.m. before leaving his hotel to return home to New York. (*Id.* 10:11-15, 11:19-21). Defendant was initially arrested and cited with driving under the influence of drugs and alcohol. (Burns Depo. at 22:11-17; D.I. 32, Ex. D at 4). The charges, however, were later dismissed – the case was *nolle prosequi*. (*Id.*, Ex. J).

The accident occurred on a remote section of highway that was dark, dry, and unlit at the time and location of the collision. (Burns Depo. at 23:17-24:16). The parties agree that Defendant was travelling 50 mph one-half second prior to the accident. (D.I. 31 at 5; D.I. 36 ¶ 10; *see also* D.I. 37, Ex. A). The speed limit at the location of the accident was 55 mph. (Burns Depo. at 39:13-19). Passenger Bernstein described the accident as happening quickly, and a "split second" after Roma applied the break to his car, in light of a "reduced speed area" sign. (D.I. 32, Ex. K ("Bernstein Depo.") at 10:9-13; 11:2-7). The upcoming speed reduction area had a speed limit of 35 mph. (Burns Depo. at 39:7-12). Defendant testified that after seeing the "restricted speed limit" sign, he tapped his brakes to disengage cruise control, held his foot above the break as he slowed, and looked down at the speedometer. (Roma Depo. at 40:10-15). While Roma was looking down,

Bernstein yelled "look out," at which point Roma depressed the brakes and collided with Rivera. (*Id.* at 40:16-20; Bernstein Depo. at 11:1-11).

Rivera, through a translator, testified: "I heard the motor of a car. I got very agitated, I started to move my hand. I turned around and I waved, yes. I think I took a step into the street, I don't know, but not much. . . . Suddenly, everything disappeared." (Rivera Depo. at 53:20-54:1). He further testified that he was walking "off the road with [his] back when [he] heard the motor of a car" and then "stepped a little bit past the line" before being hit. (*Id.* at 62:21-63:2). Following the collision, Bernstein called 911 and he and Roma waited for law enforcement to arrive. (Bernstein Depo. at 8:5-11; Roma Depo. at 16:2-13).

The narrative of the collision report indicates that "the front center of [the vehicle] struck [Rivera] in the right lane of the roadway . . . ." (D.I. 32, Ex. D at 4). That same report indicates that "the initial investigation shows that [Roma] was not in violation of any traffic code." (*Id.*). Corporal Burns, who investigated and reconstructed the collision, concluded "it is my opinion based on the evidence at the scene, and the injuries which he sustained, that [Mr. Rivera] was walking in the center of the northbound right lane[1], with his back to traffic, giving him little if any warning of the approaching vehicle." (D.I. 37, Ex. A). According to Corporal Burn's investigation, Rivera was walking in the highway "without a light, and while wearing dark clothing." (*Id.*). The collision occurred before the speed reduction area began. (Burns Depo. at 39:7-40:4).

---

[1] Plaintiffs' Response to Defendant's Concise Statement of Facts (D.I. 35) admits Paragraph 14 of Defendant's facts (D.I. 30), which states, in full, "[a]t the time of the accident, Mr. Rivera was walking in the northbound lane of US Highway 1 in a direction not facing traffic and not as far as practicable from the edge of the roadway" (citing D.I. 32, Ex D at 7; Ex. E at 33:13-20) (further stating "[t]his was a violation of 21 Del. C. § 4146(b))).

As noted above, on August 4, 2017, Plaintiffs filed suit against Roma. (D.I. 1, Ex. A). In the Complaint, Plaintiffs allege that Defendant was negligent in violation of Title 21 of the Delaware Code for: (1) "operating a vehicle in a careless or imprudent manner without due regard for the road conditions then existing in violation of 21 Del. C. § 4176(a); (2) "failing to give full time and attention to the operation of the vehicle and to maintain a proper lookout while operating the vehicle in violation of 21 Del. C. § 4176(b); (3) "operat[ing] his motor vehicle on the public highways while under the influence of alcohol in violation of 21 Del. C. § 4177." (*Id.* ¶ 8).

## II. <u>LEGAL STANDARD</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact is not genuinely disputed must be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

4

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### III. <u>DISCUSSION</u>

Under Delaware law, "[n]egligence cases do not readily lend themselves to summary judgment." *Jackson v. Thompson*, No. 99C12016WLW, 2000 WL 33115704, at *1 (Del. Super. Ct. Oct. 12, 2000). Indeed, the Delaware Supreme Court has determined that "[g]enerally speaking, issues of negligence are not susceptible of summary adjudication. It is only when the moving party establishes the absence of a genuine issue of any material fact respecting negligence that summary judgment may be entered." *Ebersole v. Lowengrub*, 180 A.2d 467, 468 (Del. Supr.

1962). The *Ebersole* court also noted that "questions of proximate cause except in rare cases are questions of fact ordinarily to be submitted to the jury for decision." *Id.* So too, courts in Delaware have stated that "when comparative negligence is part of the case 'the determination of the respective degrees of negligence attributable to the parties usually presents a question of fact for the jury.'" *Jackson*, 2000 WL 33115704, at *1 (citing *Trievel v. Sabo*, 714 A.2d 742, 745 (Del. Supr. 1998)).

Defendant argues that he is entitled to summary judgment because Plaintiffs cannot prove that Defendant was negligent and, alternatively, that Mr. Rivera assumed the risk of injury. (D.I. 31 at 3). Defendant contends that he was not negligent because he "was operating his vehicle appropriately and in fact braking to obey the reduction in the speed limit when Mr. Rivera suddenly appeared in the path of his vehicle" while "in the middle of an unlit section of the roadway, wearing dark clothing, with his back to traffic, without a light and with a blood alcohol content twice the legal limit." (D.I. 31 at 1-2). Defendant, moreover, argues that "[e]ven if the court is loath to grant Mr. Roma summary judgment on plaintiffs' failure to produce proof of negligence, this is also the rare case where the doctrine of assumption of risk exonerates Mr. Roma" because "Mr. Rivera's conduct on the morning of November 1, 2015 caused his injuries." (*Id.* at 2). In support of this contention, Defendant argues that Rivera's conduct violated several Delaware statutory provisions enacted for the protection of pedestrians, which would constitute negligence *per se*[2]. (*Id.* at 12-13).

---

[2] 21 Del. C. § 4146(b) ("Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk facing toward traffic only on a shoulder, as far as practicable from the edge of the roadway");

21 Del. C. § 4146(d) (". . . any pedestrian upon a highway shall yield the right-of-way to all vehicles upon the highway. . . .");

Plaintiffs respond that summary judgment is inappropriate on the record before the Court because material questions of fact remain regarding Defendant's compliance with 21 Del. C. §§ 4176(a), 4176(b), and 4177. Specifically, Plaintiffs argue that questions remain with respect to: (1) whether Defendant's beer consumption the night before the accident indicates that he was operating the vehicle under the influence of alcohol; (2) whether Defendant's beer consumption and little sleep the night before the collision indicate that he was operating his vehicle in a careless and imprudent manner; (3) "whether Defendant was giving full time and attention to the operation of his vehicle and maintaining a proper lookout" before he collided with Rivera; and (4) whether Defendant was operating his vehicle in a careless or imprudent manner when he began decelerating his vehicle before the reduced speed area, given the distance before it began. (D.I. 34 at 4-7). Regarding whether Defendant was driving attentively or keeping a proper lookout, Plaintiffs also argue that "when [Roma] tapped his brakes to disengage the cruise control after seeing the 35 mile-per-hour speed limit sign he should have seen Mr. Rivera who was walking between his vehicle and the speed limit sign and taken evasive measures to avoid hitting Mr. Rivera." (*Id.* at 6). Plaintiffs do not address any negligence by Rivera in their papers.

---

21 Del. C. § 4147(c) ("No person shall stand in a highway for the purpose of soliciting a ride.");

21 Del. C. § 4148(a) ("No pedestrian shall walk upon any roadway or shoulders of any roadway of this State that is used for motor or vehicle traffic, beyond the corporate limits of any city or town, without carrying a lighted lantern, lighted flashlight or other similar light or reflector type device during the period of time from sunset to sunrise and at any other time when there is not sufficient light to render clearly visible any person or vehicle on the highway.");

21 Del. C. § 4149 ("No person shall walk or be upon a highway of this State while under the influence of intoxicating liquor and/or narcotic drugs to a degree which renders the person a hazard.")

In support of his motion, Defendant cites *Trievel v. Sabo* for the proposition that summary judgment is appropriate because "no reasonable fact finder would conclude that any negligence on the part of Mr. Roma was greater than the negligence of Mr. Rivera." (D.I. 14 at 10-11, 14). The Court in *Trievel*, however, did not rule on a motion for summary judgment, but instead upon a motion for judgment as a matter of law at the close of plaintiffs' case at trial. *Trievel*, 714 A.2d at 743-44 ("the trial judge . . . permitted the Trievel Plaintiffs to fully present their case . . ."). After hearing testimony from seven eyewitnesses, none of whom implicated the Defendant as being at fault, the Court found that "[b]ecause the overwhelming evidence, viewed in the light most favorable to the Trievel Plaintiffs, can only lead to the conclusion that Trievel's negligence was greater than any negligence attributable to Sabo," judgment as a matter of law was appropriate. *Id.* at 746.

Here, Defendant has provided the Court with several deposition transcripts, police reports, an incident photo, and a toxicology report of Plaintiff Rivera following his admittance to the hospital. Though this evidence is illuminating regarding the events leading up to and including the collision, the summary judgment standard requires the Court to view all evidence in a light most favorable to Plaintiffs, as the non-moving party. Rivera claims that he was on the side of the road and only may have stepped into the lane when he turned to waive at Roma's car. Rivera also claims that Roma's admitted alcohol consumption the night before the collision would have placed the Defendant in violation of the statutory provision prohibiting driving under the influence. Further, Rivera claims Roma failed to keep a proper lookout because Rivera was walking in between the car's location and speed reduction sign, and thus should have been in view of the driver. At trial, a jury must determine the reasonableness of Roma's actions and weigh those against the alleged statutory violations of Plaintiff Rivera.

While it may be unlikely that Plaintiffs will prevail at trial in showing the Defendant was negligent or that, if proven, Defendant's negligence outweighed Rivera's own negligence, genuine issues of material fact remain regarding the collision and the events and actions by the parties beforehand. Thus, it would be inappropriate for the Court to impose its own value and credibility judgments in place of a consideration of evidence by the requested trier of fact: a jury. Thus, Defendant's motion for summary judgment is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. An appropriate order will follow.